UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| STUART MITCHELL, Individually and Derivatively on Behalf of FLEXLIFE GROUP, LTD. N/K/A FLXG SCOTLAND LIMITED, | § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civ. Action No. 4:17-CV-03372 |
| SEANAMIC GROUP, LTD., DAVID CASSIE, CIARAN O'DONNELL, GARRY MILLARD, JOCK GARDINER, AND JEFFERY CORRAY | § § § § § | |
| Defendant. | § § | |

## COMPLAINT, REQUEST FOR TEMPORARY RESTRAINING ORDER, TEMPORARY INJUNCTION AND PERMANENT INJUNCTION

TO THE HONORABLE JUDGE OF SAID COURT:

Plaintiffs, Stuart Mitchell, individually and derivatively on behalf of Flexlife Group, Ltd. N/K/A FLXG SCOTLAND, LTD., file this Original Complaint against Defendant, Seanamic Group, Ltd. and, in support thereof, respectfully show as follows:

### I. PARTIES

1.1    Stuart Mitchell is an individual and may be served with pleadings and process in this adversary proceeding through the undersigned counsel.

1.2    Flexlife Group, Ltd., N/K/A Flxg Scotland, Ltd., ("Plaintiff Flexlife") is a foreign corporation doing business as Flexlife Group, Inc.

1.3    Flexlife Group, Inc. is a Texas for-profit corporation and Plaintiff Mitchell's prior

employer.

1.4     Seanamic Group, Ltd. is a foreign corporation doing business in Texas at 10711 Cash Road, Stafford, TX  77477.

1.5     Defendant, David Cassie, is a nonresident of Texas, whose address is 32 Westholme Avenue, Aberdeen, Scotland, AB15 6AB and may be served with process pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure ("FRCP"), the Hague Service Convention, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504 (2017), and Chapter 17 of the Texas Civil Practice & Remedies Code ("CPRC") by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from defendant's business in Texas.

1.6     Defendant, Ciaran O'Donnell, is a nonresident of Texas, whose address is 6 Rubislaw Den South, Aberdeen, Aberdenshire, United Kingdom, AB15 4BB and may be served with process pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure ("FRCP"), the Hague Service Convention, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504 (2017), and Chapter 17 of the Texas Civil Practice & Remedies Code ("CPRC") by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from defendant's business in Texas.

1.7     Defendant, Garry Millard, is a nonresident of Texas, whose address is 156 Victoria Street, Dyce, Aberdeen, AB21 7DN and may be served with process pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure ("FRCP"), the Hague Service Convention, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504 (2017), and Chapter 17 of the Texas Civil Practice & Remedies Code

("CPRC") by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from defendant's business in Texas.

1.8     Defendant, Jock Gardiner, is a nonresident of Texas, whose address is 38 Harlaw Road, Aberdenshire, United Kingdom, AB15 4YY and may be served with process pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure ("FRCP"), the Hague Service Convention, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504 (2017), and Chapter 17 of the Texas Civil Practice & Remedies Code ("CPRC") by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from defendant's business in Texas.

1.9     Defendant, Jeffery Corray, is a nonresident of Texas, whose address is 22 Waverley Place, Aberdeen, United Kingdom, AB10 1XP and may be served with process pursuant to Rule 4(f)(1) of the Federal Rules of Civil Procedure ("FRCP"), the Hague Service Convention, *Water Splash, Inc. v. Menon*, 137 S.Ct. 1504 (2017), and Chapter 17 of the Texas Civil Practice & Remedies Code ("CPRC") by serving the Texas Secretary of State, 1019 Brazos Street, Austin, Texas 78701, as defendant's agent for service because defendant engages in business in Texas but does not maintain a regular place of business in Texas or a designated agent for service of process, and this suit arose from defendant's business in Texas.

## II. PROCEDURAL HISTORY

2.1     On August 27, 2011, Flexlife Group, Inc. was formed as a Texas for-profit corporation.

2.2     On October 25, 2017, Plaintiffs filed suit against Seanamic Group, Ltd. in the 400th Judicial District Court of Fort Bend County, Texas.

2.3     Plaintiff Mitchell filed as an individual and also in a representative capacity by alleging derivative claims on behalf of the shareholders of Flexlife Group, Ltd. against Seanamic Group, Ltd.

2.4     Plaintiffs alleged Defendant Seanamic, engaged in fraud in a stock transaction, violations of the Texas Theft Liability Act and Texas Uniform Fraudulent Transfer Act, Conversion, and Conspiracy.

2.5     On October 26, 2017, Judge Maggie Perez-Jaramillo signed a Temporary Restraining Order prohibiting Defendant Seanamic from using either the patent or the customer lists. Ex. B.

2.6     Defendant Seanamic ignored the TRO.

2.7     On November 6, 2017, just a couple of hours before the Temporary Injunction hearing, Defendant Seanamic filed a Notice of Removal.

## III.  FACTS

3.1     The following are based on information or belief.

3.2     In 2007, Plaintiff Mitchell, and John N. Marsden, formed Flexlife, Ltd. to provide design, manufacture, installation, integrity management and life extension of unbonded flexible pipes used in offshore and onshore petroleum operations.

3.3     Messrs. Mitchell and Marsden developed and patented equipment and processes for inspection, maintenance and repair of flexible pipeline.

3.4     Messrs. Mitchell and Marsden transferred ownership of this intellectual property to Flexlife, Ltd.

3.5     Through Flexlife, Ltd., Messrs. Mitchell and Marsden developed a customer list for its patented equipment and processes.

3.6     Plaintiff Flexlife, was formed as a holding company that acquired 100% ownership of Flexlife, Ltd. and its assets.

3.7     Plaintiff Mitchell owns approximately 34% of the voting shares of stock issued by Plaintiff Flexlife and was a member of the board of directors at all times relevant to this lawsuit.

3.8     On August 17, 2011, Plaintiff Flexlife formed a wholly owned subsidiary, Flexlife Group, Inc., in Texas to expand its global operations.

3.9     In October of 2014, Plaintiff Mitchell took over the North American operations of Flexlife Group, Inc., and served as the President and Global Business Development Director, among other roles.

3.10    Plaintiff Mitchell's employment transferred from Plaintiff Flexlife to Flexlife Group, Inc.

3.11    While Plaintiff Mitchell continued the impressive development of business through Flexlife Group, Inc. here in the States, the UK operations of Plaintiff Flexlife was floundering under the new management.

3.12    Defendant Seanamic owns various subsidiaries and principally operates out of Stafford, Texas. Ex. A at Ex. 2.

3.13    On October 19, 2017, Defendant Seanamic announced that it had acquired Plaintiff Flexlife which held Flexlife, Ltd and Flexlife Group, Inc. which in turn owns the patented technologies, processes and customer lists.

3.14    Plaintiff Michell had no prior notice of any meetings regarding a proposed sale of Plaintiff Flexlife or its assets.

3.15    Plaintiff Mitchell had no prior notice of any meetings regarding the sale of Plaintiff Flexlife or its assets.

3.16    Plaintiff Mitchell did not vote or sign a proxy permitting anyone else to vote his shares in Plaintiff Flexlife to pursue the sale of Plaintiff Flexlife or its assets.

3.17    Plaintiff Mitchell did not vote or sign a proxy permitting anyone else to vote his shares in Plaintiff Flexlife to authorize the sale of Plaintiff Flexlife or its assets.

3.18    Defendant Seanamic has not provided to Stuart Michell an auditor's report of the value of the shares prior to the purchase of Plaintiff Flexlife.

3.19    Defendant Seanamic has not provided to Stuart Michell an auditor's report of the value of the shares subsequent to the purchase of Plaintiff Flexlife.

3.20    Defendant Seanamic has absconded with the assets of Plaintiff Flexlife.

3.21    Plaintiff Mitchell has not received compensation for his interest in Plaintiff Flexlife or its subsidiaries and other assets.

3.22    Dave Cassie, Ciaran O'Donnell, Jock Gardiner and Gary Millard changed intercompany loan notes during 2017.

3.23    Dave Cassie, Ciaran O'Donnell, and Jock Gardiner received money from the sale of Plaintiff Flexlife to Defendant Seanamic.

3.24    Gary Millard received employment through Flexlife, Ltd. when Defendant Seanamic acquired Plaintiff Flexlife.

3.25    Gary Millard is currently the CEO of Flexlife, Ltd., an asset Defendant Seanamic acquired from Plaintiff Flexlife.

3.26    Gary Millard is currently a Director of Flexlife, Ltd., an asset Defendant Seanamic acquired from Plaintiff Flexlife.

3.27     Dave Cassie, Ciaran O'Donnell, and Jock Gardiner remain as board members of Plaintiff Flexlife.

3.28     While these board members and Defendant lined their pockets, Plaintiff Flexlife was left penniless and without a means to compensate Plaintiff Mitchell under either Plaintiff Mitchell's employment contract or shareholder interest in Plaintiff Flexlife.

3.29     Just prior to the transaction with Defendant Seanamic, Defendants represented to Plaintiff Mitchell that his shares in Plaintiff Flexlife were without any value and offered to allow Plaintiff Mitchell to retain shares in Plaintiff Flexlife while the Defendants were secretly finalizing the sale.

3.30     Defendant Seanamic did not comply with the TRO issued in the state court matter.

3.31     Plaintiff Flexlife was placed in breach of Plaintiff Mitchell's employment agreement by certain members of the board and management of Plaintiff Flexlife.

3.32     Defendant Seanamic's acquisition of all of the assets of Plaintiff Flexlife left Plaintiff Flexlife no assets with which to pay Plaintiff Mitchell the amount he is owed under the employment contract.

## IV.  DERIVATIVE PROCEEDING

4.1     With respect to the below causes of action, Plaintiffs, Flexlife and Stuart Mitchell, bring a derivative proceeding under Texas Business Organizations Code § 21.551 *et seq.* (Subchapter L entitled Derivative Proceedings of Chapter 21 entitled "For-Profit Corporations" of the Texas Business Organizations Code). Plaintiffs bring the derivative proceeding in the alternative to the Causes of Action brought by Plaintiffs as direct claims.

4.2     Plaintiff Flexlife is a closely held corporation as defined by Section 21.563 of the Texas Business Organizations Code.

4.3     Plaintiff Mitchell was one of the founding members of Flexlife. Plaintiff Mitchell has served as the CEO of the company, Director of Strategic Development and Global Business Development Director when he was transferred to Houston to run Flexlife Group, Inc.

4.4     Plaintiff Mitchell was a shareholder of the company at the time of the acts and omissions complained of in this Original Complaint. Plaintiff Mitchell was a shareholder when Defendant undertook the following acts or omissions: (a) voting on the sale of Plaintiff Flexlife without notifying Plaintiff Mitchell; (b) paying employees of Plaintiff Flexlife to engage in the scheme to defraud Plaintiff Mitchell of his ownership interest in Flexlife; (c) holding shareholder's meetings regarding the sale of Flexlife without notifying Plaintiff Mitchell and perhaps other shareholders; (d) utilizing the company's assets for their own benefit; (e) failing to disclose all matters affecting the company to company representatives, including Plaintiff Flexlife, Flexlife, Ltd., Flexlife Group, Inc. and Plaintiff Mitchell.

4.5     Thus, Plaintiffs have standing to file this derivative proceeding.

4.6     Plaintiffs are not required to wait the 90-day period from demand because Section 21.563 Texas Business Organizations Code obviates the applicability of Sections 21.552-559 of the Texas Business Organizations Code for closely held companies.

4.7     Even if those sections did apply, Plaintiffs may bring this derivative action without waiting the 90 days pursuant to Section 21.553(b) of the Texas Business Organizations Code because the corporation is suffering irreparable injury or will suffer irreparable injury because Plaintiff Flexlife will be left without any value due to the transfer of the patented technology and customer lists needed to maintain it as a going concern.

## V.     CAUSES OF ACTION

5.1     Plaintiffs incorporate herein by reference the foregoing allegations as if fully set

forth at length.

> *a. Fraud in a Stock Transaction*

5.2     Pursuant to Section 27.01 of the Texas Business & Commerce Code, fraud in a transaction involving stock in a corporation consists of a false representation of a past or material fact or omission that is relied on by a person entering into the contract or a false promise to do an act, when the false promise is material, made with the intention of not fulfilling it and made to a person for the purpose of inducing that person into entering into a contract and relied on by the person in entering into the contract.

5.3     Defendants made false representations with actual awareness of the falsity of the statements and has caused Stuart Mitchell actual damages in the form of compensation received by others for Plaintiff Mitchell's ownership interest in Plaintiff Flexlife. The actual awareness may be inferred from where objective manifestations indicate that a person acted with actual awareness, which Defendants did when Defendants represented that Plaintiff Mitchell's ownership interest in Plaintiff Flexlife has no value.

5.4     Due to the actual awareness of the falsity of their representations, Plaintiff Mitchell is entitled to and seeks herein exemplary damages.

5.5     Due to the fraud in the stock transaction(s), Plaintiff Mitchell is also entitled to recover his reasonable and necessary attorneys' fees, expert witness fees, costs for copies of depositions and costs of court.

> *b. Texas Theft Liability Act.*

5.6     Chapter 134 of the Texas Civil Practice & Remedies Code is the Texas Theft Liability Act (TTLA). TEX. CIV. PRAC. & REM. CODE § 134.001. Under the TTLA, a person who commits theft is liable for the damages resulting from the theft. TEX. CIV. PRAC. & REM. CODE §

134.003(a). The TTLA defines theft as uunlawfully appropriating property or unlawfully obtaining services as described in Sections 31.03 and/or 31.06 of the Texas Penal Code.

5.7     Under the Texas Penal Code, a person commits the offense of theft if he unlawfully appropriates property without the owner's effective consent with intent to deprive the owner of the property. TEX. PEN. CODE § 31.03(a)(1).

5.8     Effective consent includes consent by a person legally authorized to act for the owner and is not effective if induced by deception or coercion or given by a person the actor knows is not legally authorized to act for the owner. TEX. PEN. CODE § 31.01(3). To deprive is to withhold the property from the owner either permanently or for such an extended a period that a major portion of the value or enjoyment of the property or to dispose of property in such a manner that makes recovery of the property by the owner unlikely. TEX. PEN. CODE § 31.01(2)A, C.

5.9     Deception is selling or otherwise transferring or encumbering property without disclosing a lien, security interest, adverse claim, or other legal impediment to the enjoyment of the property, whether the lien, security interest, claim, or impediment is or is not valid, or is or is not a matter of official record.  TEX. PEN. CODE § 31.001(1)(d).

5.10    Without notice or vote by Dave Cassie, Ciaran O'Donnell, and Gary Millard manipulated the debt to asset ratio through intercompany loan notes.

5.11    While these board members secretly sold off the assets of Plaintiff Flexlife and lined their pockets, Plaintiff Flexlife was left penniless and without a means to compensate Plaintiff Mitchell under either Plaintiff Mitchell's employment contract or shareholder interest in Plaintiff Flexlife.

5.12    The owner of stolen property may recover the actual damages plus $1,000. Under the Texas Penal Code, the value of stolen property is the fair market value at the time and place of

the offense. TEX. PEN. CODE § 38.08(a)(1).

5.13   Pursuant to Texas Civil Practice & Remedies Code § 134.005(b), the property owner is entitled to recover costs of suit and reasonable and necessary attorney's fees for violation of the Texas Theft Liability Act. Plaintiff Mitchell hereby prays for recovery of his reasonable and necessary attorneys' fees and costs.

c.   *Uniform Fraudulent Transfer Act.*

5.14   Chapter 24 of the Texas Business & Commerce Code is the Texas Uniform Fraudulent Transfer Act ("TUFTA"). TEX. BUS. & COMM. CODE § 24.001. Section 24.005 of TUFTA, deems a transfer made or obligation incurred by a debtor fraudulent, whether the creditor's claim arose before or after the transfer, if the debtor made the transfer or incurred the obligation:

(1) with actual intent to hinder, delay, or defraud any creditor of the debtor; or

(2) without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:

(A) was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or

(B) intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond the debtor's ability to pay as they became due.

TEX. BUS. & COMM. CODE § 24.005(a).

5.15   Defendants engaged in a transaction to transfer all of the ownership interest in and/or assets of Plaintiff Flexlife without compensation to Plaintiff Mitchell, a creditor of Plaintiff Flexlife.

5.16   Defendants purchased ownership interest in or substantially all of the assets of Flexlife for a deflated amount in relation to the actual market value of Plaintiff Mitchell's

ownership interest.

5.17    In determining actual intent under Section 24.005(a)(1), the trier of fact may

consideration, among other factors, to whether:

(1) the transfer or obligation was to an insider;

(2) the debtor retained possession or control of the property transferred after the transfer;

(3) the transfer or obligation was concealed;

(4) before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(5) the transfer was of substantially all the debtor's assets;

(6) the debtor absconded;

(7) the debtor removed or concealed assets;

(8) the value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred; and

(9) the debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred.

TEX. BUS. & COMM. CODE § 24.005(b).

5.18    The Directors of Plaintiff Flexlife retained possession or control of the property

transferred after the transfer. In a secret meeting held by certain members of the board of directors,

it was revealed that after Defendant Seanamic acquired Plaintiff Flexlife and/or all of the assets

that Flexlife, Ltd and Flexlife Group, Inc. would continue to operate with the same name and

employees, minus Plaintiff Mitchell of course.

5.19    Flexlife had already breached the employment agreement with Plaintiff Mitchell

before the transaction with Defendant Seanamic occurred.  By transferring all of the assets,

Defendant Seanamic has left Plaintiff Flexlife no means by which to pay the amount Plaintiff

Flexlife owes to Plaintiff Mitchell under his employment contract.

5.20    The transfer from Plaintiff Flexlife was substantially all of its assets because Plaintiff Flexlife consists of Flexlife, Ltd. and Flexlife Group, Inc., which are the entities Defendant Seanamic states that it acquired in the transaction.

5.21    Defendant Seanamic and Plaintiff Flexlife's board members and shareholders other than Plaintiff Mitchell, absconded with the money received for the transaction.

5.22    Defendant Seanamic and certain members of the board, shareholders, officer and/or directors of Plaintiff Flexlife removed or concealed the transfer of Flexlife, Ltd. and Flexlife Group, Inc. and other assets by failing to notify Plaintiff Mitchell of the transfer to Defendant Seanamic

5.23    Plaintiff Flexlife's management and owners other than Plaintiff Mitchell received value for Plaintiff Mitchell's ownership interest from Defendant Seanamic and did not remit it to Plaintiff Mitchell but, instead, kept it for themselves.

5.24    As a result of this fraudulent scheme, Plaintiff Mitchell has suffered the loss of the value of his ownership interest in Flexlife.

       *d.  Fraud*

5.25    To recover for fraud in Texas, the party must show "that the defendant: (1) made a material misrepresentation; (2) knew the representation was false or made recklessly without any knowledge of its truth; (3) made the representation with the intent that the plaintiff act on the representation or intended to induce the plaintiff's reliance on the representation; and (4) plaintiff suffered injury by actively and justifiably relying on the representation." *Universal MRI and Diagnostics, Inc. v. Medical Lien Management Inc. d/b/a Bridgewell,* 497 S.W.3d 653, 659 (Tex. App.-Houston [14th Dist.] 2016, no pet.) (citations omitted).

5.26     The Directors of Plaintiff Flexlife have a fiduciary duty to Plaintiff Flexlife to disclose material information affecting Plaintiff Flexlife.

5.27     As a 34% shareholder in Plaintiff Flexlife, the majority shareholders owed a fiduciary duty to Plaintiff Mitchell to act in his best interest regarding his ownership interest in Plaintiff Flexlife and its assets.

5.28     The Defendants did not notify Plaintiff Mitchell that they were selling the assets of Plaintiff Flexlife to Defendant Seanamic and, thereby, breached their fiduciary obligations to Plaintiff Flexlife.

5.29     The Defendants knew that Plaintiff Mitchell would rely on the Directors of Plaintiff Flexlife to notify Plaintiff Mitchell and permit Plaintiff Mitchell to exercise his right to vote on the sale of Plaintiff Flexlife's assets.

5.30     As a result, Plaintiff Mitchell has suffered the loss of his ownership interest in the assets of Plaintiff Flexlife.

### e.  Shareholder Oppression

5.31     Shareholder oppression occurs when the majority shareholders display burdensome, harsh, wrongful conduct or "a lack of probity and fair dealing in the company's affairs to the prejudice of some members; or a visible departure from the standards of fair dealing and a violation of fair play on which each shareholder is entitled to rely." *Willis v. Bydalek*, 997 S.W.2d 798, 801 (Tex. App.-Houston [1st Dist.] 1999, pet. den.'d).

5.32     The majority shareholders of Plaintiff Flexlife secreted their scheme and ultimate sale of all of the assets without notifying Plaintiff Mitchell that resulted in stripping all value of Plaintiff Mitchell's ownership in Plaintiff Flexlife and its assets.

5.33     Meanwhile, the majority shareholders of Plaintiff Flexlife and/or Defendant

Seanamic breached Plaintiff Mitchell's employment agreement with Flexlife Group, Inc.

### f.   Breach of Contract

5.34    Plaintiff Mitchell had an employment contract with Flexlife Group, Inc.

5.35    Plaintiff Mitchell's employment contract only allowed termination of Plaintiff Mitchell for cause.

5.36    Defendants terminated Plaintiff Mitchell for redundancy when, in fact, no redundancy existed.

5.37    Defendants have failed to pay Plaintiff Mitchell according to the terms of the contract.

5.38    Plaintiff Mitchell has suffered the loss of monies to which he is entitled pursuant to the employment agreement.

### g.   Conversion

5.39    Conversion occurs when: one, the plaintiff has possession of or owns property or a possessory interest; two, the defendant exercised control unlawfully and without permission control over the property to the exclusion of or inconsistent with the plaintiff's ownership rights; three, plaintiff demanded return of the property; and four, the defendant did not return the property. *Waisath v. Lack's Stores, Inc.*, 474 S.W.2d 444, 447 (Tex. 1971).

5.40    The Defendant has taken the ownership interest from Plaintiff Mitchell and after demand therefor did not return the property.

### h.   Conspiracy

5.41    Defendant may be held liable for conspiracy when the defendant is a member of a combination of two or more persons to accomplish an unlawful purpose or a lawful purpose by unlawful means wherein the combination agreed to a course of action and one or more of the

combination committed an unlawful overt act to further the object or course of action that proximately resulted in injury to the plaintiff. *Chon Tri v. J.T.T.*, 162 S.W.3d 552, 556 (Tex. 2005).

5.42    Defendant Seanamic and various members of Plaintiff Flexlife acted in concert to deprive Plaintiff Mitchell of the value of his ownership interest in Flexlife and/or its assets. Defendant Seanamic and various members of Plaintiff Flexlife did so by secretly selling all of the ownership interest and transferring all of the assets of Flexlife to Seanamic without compensating Plaintiff Mitchell for his interest in Flexlife.

5.43    In doing so, Stuart Michell has suffered actual damages in the loss of the value of his interest in Flexlife.

## VI. TEMPORARY RESTRAINING ORDER/TEMPORARY INJUNCTION/PERMANENT INJUNCTION.

6.1    Pursuant to Rule 65 of the Federal Rules of Civil Procedure, this court may enter injunctive relief. The *sine qua non* of injunctive relief is a showing of irreparable injury and the inadequacy of legal remedies. *See Sampson v. Murray*, 415 U.S. 61, 88 (1974). An applicant must show: (1) a cause of action against the defendant; (2) a probable right to the relief sought; and (3) a probable, imminent, and irreparable injury in the interim. *Butnaru v. Ford Motor*, *Co.,* 84 S.W.3d 198, 204 (Tex. 2002); *Ingram v. Ault*, 50 F.3d 898, 900 (11sth Cir. 1995).

### a.    Causes of Action

6.1    Plaintiffs incorporate the causes of action alleged herein above.

### b.    Probable Right to Relief Sought

6.2    Plaintiff Mitchell owns approximately 34% of the shares of Plaintiff Flexlife and did so at the time Flexlife improperly terminated Plaintiff Mitchell's contract and then secretly fleeced Plaintiff Flexlife through a sale of the ownership interest in and/or assets of Plaintiff Flexlife to Defendant Seanamic almost immediately thereafter. Plaintiff Mitchell was not provided

notice of any vote to either seek a potential buyer or for the sale. Plaintiff Mitchell has yet to be compensated for his interest in Flexlife.

### c.  A Probable, Imminent, and Irreparable Injury

6.3     There is a probable, imminent threat of irreparable injury if the transaction involving the sale to Defendant Seanamic is not returned to the status quo. The purchase of Flexlife gives Defendant Seanamic unfettered access to patented and proprietary products and processes regarding customer lists to directly compete with Flexlife. Should the transaction not be returned to the status quo, there will be impossible to repair the damage caused by the dissemination and commercial use of patented and trade secret information of Plaintiff Flexlife

6.4     Plaintiffs therefor seek a temporary restraining order requiring Defendant Seanamic to return the patented and proprietary products and processes to Plaintiff Flexlife and restrain Defendant Seanamic from using, for any purpose, or disseminating information related to the patented technology and trade secret information of Plaintiff Flexlife Plaintiffs will further suffer the loss of information related to the transaction between Plaintiff Flexlife, its officers, directors, shareholders and employees, and Defendant Seanamic and its parents or subsidiaries should Defendant Seanamic not be restrained from destroying said information. Plaintiffs simply ask that the issue the Temporary Restraining Order to maintain the status quo until a temporary injunction hearing set by this Court within the next two weeks.

### d.  Public Interest.

6.5     There is no harm to the public interest in unwinding the sale of Plaintiff Flexlife to Defendant Seanamic because this is a closely held company. Thus, there is no harm to the securities market. Furthermore, this is a closely held business such that unwinding this transaction and requiring Defendant Seanamic to protect and preserve the evidence and property that will more

than likely be used to pay the damages herein.

6.6     Plaintiffs have already posted a $1,000 bond and ask the Court to determine that the Plaintiffs have met the bond requirement.

## VII.   DAMAGES

7.1     Plaintiffs have suffered damages as a result of the Defendants' actions as set forth in the causes of action listed above.

7.2     Plaintiff Mitchell pleads for the recovery of his ownership interest in Flexlife and or its assets estimated to be at least $1,000,000 U.S.

## VIII.   EXEMPLARY DAMAGES

8.1     Defendants' malicious conduct warrants an award of exemplary damages.

8.2     Chapter 41 of the Texas Civil Practice & Remedies Code authorizes the award of exemplary damages for, among other factors, fraud and malice. Plaintiff Flexlife and Seanamic's acts or omissions, when viewed objectively from the Plaintiffs' standpoint at the time it occurred, involved an extreme degree of risk, considering the probability and magnitude of the potential harm to Plaintiff Mitchell.

8.3     The Defendants had actual and subjective awareness of the risk but proceeded with a conscious indifference to the rights, safety or welfare of the Plaintiffs.

Based on the circumstances described hereinabove, the Defendants' behavior and statements toward the Plaintiffs demonstrated a specific intent to cause substantial injury or harm to the Plaintiffs.

## IX. CONCLUSION

For these reasons, Plaintiffs, Stuart Mitchell, individually and derivatively on Behalf of Flexlife Group, Ltd., respectfully ask that the Court to grant Plaintiffs' restraining order, set a nominal bond, set a temporary injunction hearing and, after final trial, be awarded a permanent

injunction, damages, pre and post-judgment interest, exemplary damages, reasonable and necessary attorneys' fees and costs and all other relief to which Plaintiffs are justly entitled.

Respectfully submitted,

LUCCI SMITH LAW, PLLC

/s/ *Jacqueline Lucci Smith*
Jacqueline Lucci Smith
Texas Bar No.: 00786073
jls@luccismithlaw.com
Joseph K. Watts
Texas Bar No.: 24005135
jwatts@luccismithlaw.com
2550 Grey Falls, Suite 375
Houston, Texas 77077
Telephone: 832-494-1700

ATTORNEY FOR PLAINTIFFS
FLEXLIFE GROUP, LTD. AND STUART
MITCHELL

## CERTIFICATE OF SERVICE

I, the undersigned attorney, certify that a true and correct copy of the foregoing instrument was served electronically upon the following counsel of record this 15th day of November, 2017:

Chris Hanslik
Whitney Brieck
Kirby Grove
2925 Richmond Ave., 14th Floor
Houston, TX  77098

By:    /s/ Jacqueline Lucci Smith
JACQUELINE LUCCI SMITH
ATTORNEY FOR PLAINTIFFS
FLEXLIFE GROUP, LTD. AND STUART
MITCHELL